Request of House of Representatives,
No. 4953.

OPINION OF THE JUSTICES.

Submitted June 9, 1961.

Answer returned June 12, 1961.

The following resolution adopted by the House of Representatives on June 2, 1961, was filed in this court on the same day:

"WHEREAS, there is pending before the House of Representatives House Bill No. 108, An Act relative to the Town of Hampton Municipal Development Authority, in which amendments are proposed to chapter 412 of the Laws of 1959 entitled An Act to create the Town of Hampton Marsh Reclamation Authority, and

"WHEREAS, said act would provide for the possible expenditure by the town of Hampton of public funds and the possible use of the credit of said town and of the state of New Hampshire to assist the

Town of Hampton Marsh Reclamation Authority in the accomplishment of the purposes set forth in the act, and

"WHEREAS, under Article 12 of Part First, Article 4 of Part Second and other provisions of the Constitution of New Hampshire and under the Fourteenth Amendment to the Constitution of the United States public money may not be used except for a public service or a public use, and

"WHEREAS, questions have arisen as to the constitutionality of said act and the validity of expenditures authorized to be made thereunder, now therefore be it

"RESOLVED, that the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions of law:

"1. Is it within the competency of the General Court under Article 12 of Part First and Article 4 of Part Second of the Constitution of New Hampshire and the Fourteenth Amendment to the Constitution of the United States to authorize public funds to be expended for the purposes set forth in said bill?

"2. Will projects to develop or redevelop marsh land for residential, commercial, industrial, and business purposes proposed by said bill, be for public uses?

"3. Is it constitutionally competent for the General Court to provide for the town of Hampton to make contracts providing financial assistance to the Town of Hampton Marsh Reclamation Authority and pledge its full faith and credit therefor, as proposed in paragraphs (j) through (m) of RSA 412:27, as inserted by section 21 of the bill?

"4. Is it constitutionally competent for the General Court to authorize the State of New Hampshire to guarantee payment of the principal of and interest on indebtedness issued by the Town of Hampton Marsh Reclamation Authority as provided in section 28 of said chapter 412 as amended by said bill?

"5. Is it constitutionally competent for the General Court to permit or require the reclaimed real property be first offered for sale to the owners from which real property was originally taken by the Town of Hampton Reclamation Authority as provided in section 5 (b) as amended by said bill?

"BE IT FURTHER RESOLVED that the Speaker transmit seven copies of this resolution and of House Bill No. 108 to the Clerk of the Supreme Court for consideration by said court."

The following answer was returned:

*To the House of Representatives:*

The Justices of the Supreme Court make the following reply to the request contained in your resolution of June 2, 1961 relating to House Bill No. 108, entitled "An Act relative to the Town of Hampton Municipal Development Authority."

House Bill No. 108 would amend numerous provisions of existing law found in Laws of 1959, c. 412, which created the "Town of Hampton Marsh Reclamation Authority." In essence, the bill would change the name of this Authority to "Town of Hampton Municipal Development Authority"; would elaborate upon the legislative findings of public necessity contained in the 1959 act; would more specifically define the area to be affected; and would prolong the corporate existence of the Authority, and enlarge its powers to embrace the powers of a housing authority granted by RSA ch. 205, in addition to those specifically granted to it by the original act as amended by the bill. The bill would further elaborate upon the procedures incident to establishment of a project for development; would revise procedures relating to the disposition of property acquired by the Authority; would modify provisions relating to the issue of bonds; and finally would authorize the State to guarantee the bonds of the Authority and authorize the town of Hampton on votes of its inhabitants to enter into contracts with the Authority to furnish it financial assistance in paying its bonds to be supported by pledge of the full faith and credit of the town to the payment of annual contributions for that purpose.

Your first two questions present the issue of whether projects contemplated by the bill, for the development or redevelopment of marshlands in Hampton, would be public uses, so that the Legislature may authorize the expenditure of public funds for that purpose, without violation of the provisions of *Art.* 12th, Pt. I and *Art.* 4th, Pt. II of the Constitution of New Hampshire and the Fourteenth Amendment to the Constitution of the United States. Since Article 4th of Part II referred to in your first inquiry relates to the establishment of courts, while Article 5th, Part II contains provisions relating to the use of public funds for private ends, we assume that the latter article of the Constitution rather than the former was intended to be specified by your first question.

The provisions of the proposed bill, in conjunction with those of the existing law which it would amend, disclose a purpose which

is closely allied to that of the legislation relating to "Redevelopment Projects" which was before this court in *Velishka v. Nashua*, 99 N. H. 161. Thus section 9 of the bill, would grant to the Hampton Authority the powers granted to housing authorities by that same legislation, which now appears in RSA ch. 205. The questions of whether such redevelopment projects are for public uses, and whether public moneys may constitutionally be used for such a purpose were thoroughly considered and affirmatively answered in that opinion, to which you are respectfully referred. Views there expressed were recently confirmed in an opinion returned to you on April 4, 1961. *Opinion of the Justices*, 103 N. H. 258.

The circumstance that the area involved in the redevelopment proposed by House Bill No. 108 would be within a single town, does not affect the applicability of the views expressed in the cited opinions. *State v. 4.7 Acres of Land*, 95 N. H. 291, 295; *Shirley v. Commission*, 100 N. H. 294, 297. Your first two inquiries are accordingly answered in the affirmative.

Your third and fourth inquiries raise the question of whether the Legislature may constitutionally authorize the State to guarantee indebtedness to be incurred by the Authority for the purposes of the amended act as provided by section 22 of the bill, and whether it may similarly authorize the town of Hampton to enter into contracts for financial assistance to the Authority to be supported by pledges of the full faith and credit of the town, as would be provided by section 21 of the bill.

The constitutional validity of the proposal to authorize guaranty by the State of indebtedness of the Authority does not appear to us to be in doubt. *Opinion of the Justices*, 103 N. H. 258, *supra*, and opinions cited therein. Nor do we perceive any constitutional objections to authorizing the town which will receive special benefits from the legislation to share the expense. *Leavitt v. North Hampton*, 98 N. H. 193. The Legislature has plenary control over the powers of towns, and the establishment of their debt limits. *State v. Goffstown*, 100 N. H. 131; *Welch v. Read*, 100 N. H. 174. See *Opinion of the Justices*, 101 N. H. 544.

Your final inquiry reads as follows: "Is it constitutionally competent for the General Court to permit or require the reclaimed real property be first offered for sale to the owners from which real property was originally taken by the Town of Hampton Reclamation Authority as provided in section 5(b) as amended by said bill?"

"Section 5 (b) as amended by said bill" appears to be an inaccurate reference. We are informed however that a proposal has been made to insert after line 489 in section 14 of the bill a new subsection 15 (b) in the form reproduced at the foot of this opinion.[1] We accordingly relate our reply to that proposal.

The inquiry presupposes that property acquired for a redevelopment project is in order for disposal by the Authority for private development or redevelopment according to the project plan. The proposed amendment of the bill would allow such property to be offered to former owners within the project area in proportion to the area of their former holdings. This proposal appears to us to contemplate a classification of prospective purchasers which would be neither arbitrary nor discriminatory, but might reasonably be thought to rest upon equitable and substantial considerations. *Woolf* v. *Fuller*, 87 N. H. 64, 72, 73. Hence we see no reason to hold that the proposed amendment to the bill would violate the Constitution if enacted, or that it would fall without the constitutional competency of the Legislature to enact. Your fifth question as related to the proposed amendment to the bill is answered in the affirmative.

FRANK R. KENISON.
LAURENCE I. DUNCAN.
AMOS N. BLANDIN, JR.
EDWARD J. LAMPRON.
STEPHEN M. WHEELER.

June 12, 1961.

[1] (b) The final plan may provide that real property in a project area to be sold for development or redevelopment in accordance with such plan, shall first be offered to the owners in fee simple of real property in that project area from whom land was acquired by the authority. Such offer or offers shall be made under such procedure and in such manner as the authority shall determine provided at least thirty days' notice of such offer and of its expiration date shall be given by publication. No such former owner shall be entitled by virtue of this sub-section to an offer for a larger proportion of the area so to be sold by the authority than is represented by the proportion the area of such former owner's land bears to the total project area. Nothing in this paragraph (b) shall require the authority to offer property for sale at less than its highest marketable value or to reduce or change the size of any lot or otherwise to take action which would be inconsistent with the general purposes of the final plan.